Paul WOODWARD, Joanne Woodward, Adminstratrix of the Estate of Robert Woodward, and Jill Woodward Debrady, Plaintiffs–Appellants,

v.

TOWN OF BRATTLEBORO, Marshall Holbrook, and Terrance Parker, Defendants–Appellees.

Docket No. 04–4203.

United States Court of Appeals, Second Circuit.

Aug. 23, 2005.

Joel T. Faxon, New Haven, CT (Stratton Faxon, New Haven, CT, Thomas W. Costello, Brattleboro, VT, on the brief), for Appellants.

Nancy G. Sheahan (William F. Ellis, on the brief), McNeil, Leddy & Sheahan, Burlington, VT, for Appellees.

Present: POOLER, SOTOMAYOR, Circuit Judges, and KORMAN, Chief District Judge.*

---

\* The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

14

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is **VACATED** and **REMANDED** for further proceedings.

Plaintiffs-appellants, the estate and family of Robert Woodward ("Woodward") appeal from a judgment of the district court granting summary judgment to defendants-appellees, including Marshall Holbrook and Terrance Parker ("Officers"), on appellants' claims under 42 U.S.C. § 1983 of excessive force based on the Officers' shooting and killing of Woodward. We assume the parties' familiarity with the facts, proceedings below, and specification of issues on appeal.

We review a district court's grant of summary judgment de novo. *See Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 123 (2d Cir.2002). Summary judgment is appropriate where, examined in the light most favorable to the nonmovant, the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.*

In excessive force cases involving qualified immunity, we first ask whether the facts, taken in the light most favorable to the plaintiff, show that the use of force was not objectively reasonable. *Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir.2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If it was not reasonable, we next ask the purely legal question of whether the law was sufficiently established that a reasonable officer would know his conduct was unlawful. *Id.*

Deadly force is reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Cowan*, 352 F.3d at 762. The threat must be immediate. *See Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (disapproving deadly force against escaping felons except in cases of immediate threat); *Cowan*, 352 F.3d at 762 (finding that whether a car driver posed a deadly threat depended on whether the car was in fact bearing down on the officer at the moment that he fired at the car); *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir.1996) (citing an "immediate threat" standard). In this inquiry, courts must be cognizant of the fact that the officers are often making split-second judgments in tense, uncertain, and rapidly evolving circumstances. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir.2003). Furthermore, it is irrelevant that the officer may have negligently helped create the deadly circumstances; only the circumstances immediately prior to and at the moment of the deadly force are relevant. *Salim*, 93 F.3d at 92.

Here, four witnesses gave sworn statements that Woodward made no advances or threatening moves toward the Officers or any bystanders before he was shot. The district court discounted these witnesses' accounts for unconvincing reasons. Specifically, Ames stated that he could not see Woodward very well when the Officers arrived. But when the Officers arrived, Woodward was behind the podium, where of course Ames's view would be obstructed; when he was shot, Woodward was out in the open. Norman Hunt stated that before the first shot, his attention was glued on the officers. A rational factfinder could infer that the fact that Norman Hunt's concentration was not broken by an attack indicates that there was no attack, or that Hunt's concentration would naturally have shifted after the first shot. Mary Hunt stated that things happened

too fast for anyone to tell everything that happened. Nonetheless, one of the things that she did observe, and swore to, was that Woodward did not advance on the Officers. Wilson stated that prior to the shooting, she was not looking directly into Woodward's eyes. There is a great difference between making eye contact with a person and being able to observe whether that person moves forward twenty feet. Furthermore, plaintiffs demonstrate that some witnesses who claim to have seen Woodward advance on the officers gave conflicting statements at the time of the shooting.

The district court may thus have been improvident to discount these witness statements. Nonetheless, we do not decide the summary judgment issue here. We have noted that the district court is better qualified to make a summary judgment decision in the first instance. *Vermont Teddy Bear Co. v. 1–800–Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004). There is no indication in the district court's current decision whether the grounds for granting summary judgment would remain valid if the court had fully considered the content of the witness statements. *Cf. id.* Furthermore, while the qualified immunity analysis does not duplicate the merits analysis, it may still be affected by the testimony and affidavits in question. We therefore vacate the judgment and remand to the district court for consideration of the summary judgment motion on both the merits and qualified immunity, including proper consideration of the testimony and affidavits of Ames, the Hunts, and Wilson.

For the above reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this order.